CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 26 2019

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 7:19-cr-9 |
| v. | ) |
| | ) |
| AMANY MOHAMED RAYA, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the court on defendant Amany Mohamed Raya's Motion to Dismiss Count One and Count Three of the Superseding Indictment, ECF No. 59, filed on June 10, 2019. On July 25, 2019, the government filed its written points authorities in response to this motion, and this same day, the court held a hearing on this motion and other motions noticed by the parties, see ECF No. 86. The court granted Raya fourteen (14) days leave to file a supplemental response, which was so filed on August 8, 2019, ECF No. 89.[1] This motion is fully briefed and therefore ripe for decision. For the reasons stated below, the court denies Raya's motion. The trial of this case is scheduled for four (4) days, beginning on August 27, 2019.

I.

The following background is a summary of the facts as they have been presented to the court by counsel for both parties' in their respective briefs and during the July 25, 2019 hearing. This case involves an alleged conspiracy between Amany Mohamed Raya, Eric

---

[1] The government indicated that it conferred with counsel for Price and determined that Price does not intend to supplement or join in the instant motion to dismiss. See ECF No. 85, at 2.

Aurelio Price, Monta Orlando Jordan, and "one or more unindicted co-conspirators," ECF No. 85, at 1, to smuggle contraband into the Roanoke City Jail, "for the benefit of federal detainee, Monta Jordan," id.

Raya was charged in a six-count Superseding Indictment, ECF No. 54, on June 6, 2019. Raya's alleged co-conspirator, Eric Aurelio Price, was also charged. The government alleges that Raya and Price, working together and at the direction of Monta Orlando Jordan, manufactured a binder "designed to resemble privileged legal mail so they could smuggle contraband to Jordan, a federal detainee awaiting trial at the Roanoke City Jail." Id. at 2. The government alleges that after inserting marijuana, a cellphone, and a smart watch into the spine of the fake binder, Raya attempted to send the binder to Jordan through the United States mail. Id. The package was intercepted by sheriff's deputies before it reached Jordan. Id.

Count One of the Superseding Indictment charges Raya with violating 18 U.S.C. § 1791(a)(1) and (d)(1)(B), as follows:

> 1. That on or about March 1, 2019, in the Western District of Virginia, the defendant, [Raya], contrary to Title 21, United States Code, Section 841, did knowingly provide and attempt to provide one or more prohibited objects, to wit: marihuana, to Monta Jordan, an inmate of the Roanoke City Jail, a facility in which persons are held in custody by direction of and pursuant to a contract and agreement with the Attorney General.

Count Three charges a conspiracy in violation of Title 18, United States Code, Sections 1791(a)(1), (d)(1)(B), and (d)(1)(F), as well as Title 18, United States Code, Section 371, as follows:

> 1. That in or about February and March 2018, in the Western District of Virginia and elsewhere, the defendants, [Raya, Price], also known as Eshan Muhammed, and others, knowingly conspired to commit a crime against the United States, to wit,

2

> providing and attempting to provide one or more prohibited objects: marihuana, a mobile phone, and a watch, to an inmate of the Roanoke City Jail, a facility in which persons are held in custody by direction of and pursuant to a contract and agreement with the Attorney General, . . . and committed acts to effect the object of the conspiracy, including but not limited to, the following acts:
> 
> a. In or about February and March 2018, [Raya and Price] constructed a binder, disguised as legal correspondence, which was designed to conceal marihuana, a mobile phone and a watch.
> b. On or about March 1, 2018, Price communicated electronically with and received instruction from the intended recipient of the contraband, Monta Jordan, a federal inmate of the Roanoke City Jail, about the manner in which the binder should be constructed.
> c. On or about March 1, 2018, [Raya] attempted to introduce the binder, containing marihuana, a mobile phone, and a watch, in the Roanoke City Jail through the use of the United States mail.

See ECF No. 54, at 1-3. There is no dispute that Monta Jordan is charged with federal offenses and is being held at the Roanoke City Jail ("RCJ") pursuant to a contract between the United States Marshals Service and the RCJ. ECF No. 59, at 2.

## II.

Title 18, United States Code, Section 1791 provides, in relevant part, that "Whoever, . . . in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so . . . shall be punished as provided in subsection (b) of this section." 18 U.S.C. § 1791(a)(2). Section 1791 defines "prison" as a "Federal correctional, detention, or penal facility or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4). The definition of "prison" was expanded by amendment in 2006 to include "any prison, institution, or facility in which persons are held in custody by

3

direction of or pursuant to a contract or agreement with the Attorney General." See United States v. Kemp, 200 F. Supp. 3d 1187, 1189 (D. Kan. 2016) (citing Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109–162, Title XI, § 1178, Jan. 5, 2006). The government asserts that in response to the increasing number of federal inmates held in state institutions, 18 U.S.C. § 1791 was specifically amended to make clear that the term "prison" applied not only to those institutions that are "purely federal," but "also state facilities in which federal inmates are housed by contract or agreement." ECF No. 85, at 4 n.4.

### A.

Raya argues that Count One and Count Three of the Superseding Indictment should be dismissed on several grounds. First, she argues that the RCJ is not a "prison" as defined by 18 U.S.C. § 1791 because the relevant contract to house federal detainees, including Monta Jordan, was "between RCJ and the United States Marshals Service, not the Attorney General." ECF No. 59, at 3. Raya claims, therefore, that her alleged conduct does not constitute an offense under 18 U.S.C. § 1791. Second, Raya contends that to construe § 1791(d)(4), which defines the term "prison," as including the RCJ "could" result in the government asserting federal jurisdiction over any local jail contracting with the federal government, allowing for the federal government to charge state prisoners with a federal offense for possession of prison contraband. Id. Raya claims that interpreting § 1791 in a way that enlarges federal jurisdiction in this manner violates the Tenth Amendment and principles of state sovereignty. Id. Third, Raya asserts that 18 U.S.C. § 1791 is unconstitutionally vague if interpreted to apply in a case such as hers because a person "would not be on fair notice that she could be charged

4

with a federal crime involving prison contraband by giving contraband to an inmate held in a local city jail." Id. Fourth and finally, Raya argues that, at a minimum, § 1791 is ambiguous as to what qualifies as a "prison" under § 1791, and that in accordance with the rule of lenity, the statute should be construed narrowly against the government. Id. at 4.

The court will address each of these arguments in turn, with frequent citation to a pair of cases decided by the United States District Court for the District of Kansas, see United States v. Knox, No. 15-20103-01-JAR, 2016 WL 4060258 (D. Kan. July 29, 2016), and United States v. Kemp, 200 F. Supp. 3d 1187 (D. Kan. 2016), appeal dismissed, 740 F. App'x 636 (10th Cir. 2018).

**B.**

With respect to the first of Raya's arguments, the question is not whether the RCJ is "Federal correctional, detention, or penal facility," as it plainly is not, but whether it is a facility in which Monta Orlando Jordan was being "held in custody by direction of or pursuant to a contract or agreement with the Attorney General" at the time that Raya is alleged to have committed the instant offense. It is undisputed that Jordan is charged with federal offenses and is being held at the RCJ pursuant to a contract, titled Detention Services Intergovernmental Agreement ("IGA"), see ECF No. 59-1, at 1-3 (Ex. 1), between the United States Marshals Service ("USMS") and the RCJ. The IGA allows the USMS to house federal detainees, including individuals "charged with Federal offenses and detained while awaiting trial," at the RCJ. Id. at 3. Raya also does not appear to dispute the that the IGA was in effect at the time she is alleged to have violated § 1791. Raya argues, however, that because IGA is between the RCJ and USMS, not the Attorney General himself, the RCJ is not a "prison" as

5

defined by § 1791(d)(4). In other words, Raya contends that the USMS and the Attorney General are distinct entities for purposes of § 1791, and thus providing contraband to an inmate held at the RCJ pursuant to a contract or agreement with the former is not prosecutable given that the statute only expressly names that latter.

In both Kemp and Knox, the district court rejected attempts by the defendants in those cases to draw a distinction of the same sort alleged here, namely between being held "by direction of or pursuant to a contract or agreement with" the USMS and the Attorney General. In each case, the defendant was being held on other federal criminal charges at the Corrections Corporation of America Leavenworth Detention Center ("CCA Leavenworth") when charged with violating 18 U.S.C. § 1791 for "making, possessing, and obtaining, as an 'inmate of a prison,' a prohibited object that was designed and intended to be used as a weapon." Kemp, 200 F. Supp. 3d at 1188; Knox, 2016 WL 4060258, at *1. CCA Leavenworth, a private prison, contracted with the Office of the Federal Detention Trustee ("OFDT"), acting on behalf of the USMS, to house pretrial federal detainees.[2] See Kemp, 200 F. Supp. 3d at 1189; Knox, 2016 WL 4060258, at *1. The defendants in Kemp and Knox argued for dismissal of the charges against them for failure to state an offense, alleging that CCA Leavenworth did not fall within the definition of "prison" in § 1791 because they were not being held at the direction of or pursuant to a contract with the Attorney General, but rather at the direction of the USMS or OFDT.

---

[2] The government indicated that there was period between approximately 2001 and 2012 when the Attorney General delegated its contracting authority to the Federal Detention Trustee. The government further indicated that in 2012, the Attorney General ordered the Director of the USMS to act as, and perform all functions and duties of, the Federal Detention Trustee, effectively folding the trustee program back into the USMS. See ECF No. 85, at 5.

6

The district court first noted that pursuant to 28 U.S.C. § 561(a), the USMS[3] and OFDT are both arms of the Department of Justice and managed by the Attorney General, and that "[e]ven assuming that a distinction exists between persons held by direction of the Attorney General and those held by direction of the USMS or OFDT, such a distinction is not meaningful for purposes of § 1791" because "Congress has authorized the Attorney General to delegate responsibility for the safe-keeping of pre-trial detainees to the USMS," see 18 U.S.C. § 4013.[4] The court next addressed the related argument that because § 1791, "unlike other federal criminal statutes relevant to inmates,"[5] only refers to persons held at the direction of the Attorney General, rather than at the direction of "the Attorney General or his authorized representative," Congress did not intend for the definition of "prison" in § 1791 to encompass contracts made by, inter alia, the USMS. Kemp, 200 F. Supp. 3d at 1191. The court held that it could not find that the absence of the "authorized representative" language

---

[3] 28 U.S.C. § 561(a) ("There is hereby established a United States Marshals Service as a bureau within the Department of Justice under the authority and direction of the Attorney General."); see also 18 U.S.C. § 4013(a) ("The Attorney General, in support of United States prisoners in non-Federal institutions, is authorized to make payments from funds appropriated for Federal prisoner detention for . . . the housing, care, and security of persons held in custody of a United States marshal pursuant to Federal law under agreements with State or local units of government or contracts with private entities.").

[4] Lopez v. United States, No. DR-08-CV-038-AML/VRG, 2010 WL 11506917, at *10 (W.D. Tex. Sept. 23, 2010), aff'd sub nom. Lopez v. U.S. Immigration & Customs Enf't, 455 F. App" 427 (5th Cir. 2011) ("[F]ederal law specifically authorizes the USMS to enter into IGAs for the purpose of acquiring "suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities." 28 C.F.R. § 0.111(o); see also 18 U.S.C. § 4013."); id. ("[T]he USMS is specifically authorized by federal regulation to: "(1) [r]ecei[ve], process[ ] and transport[ ] . . . prisoners held in the custody of a marshal or transported by the U.S. Marshals Service under cooperative or intergovernmental agreements[,]" (2) "[a]cqui[re] . . . adequate and suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities[,]" and (3) "[i]nvestigat[e] . . . alleged improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R.§ 0.111(j), (n)–(o)."); accord United States v. Salman, 189 F. Supp. 2d 360, 362 (E.D. Va. 2002) (noting that pursuant to 18 U.S.C. § 4013, the USMS, via delegated authority, may contract with non-federal institutions housing federal detainees); United States v. Luedtke, No. CRIM. 13-40(1) DWF, 2013 WL 3974430, at *10 (D. Minn. July 30, 2013), aff'd, 771 F.3d 453 (8th Cir. 2014) (same); Ahern v. United States, No. 2:14-CV-259, 2017 WL 2215633, at *6 (S.D. Tex. May 19, 2017), report and recommendation adopted, No. 2:14-CV-259, 2017 WL 2821949 (S.D. Tex. June 29, 2017) (citing 18 U.S.C. §§ 4002 and 4003, which "recogniz[e] that the USMS, on behalf of the Attorney General, may contract with non-Federal institutions to house federal detainees or prisoners").

[5] See, e.g., 18 U.S.C. § 751(a) (setting forth offense of "escape from the custody of the Attorney General or his authorized representative"); 18 U.S.C. § 2241 (setting forth offense of sexual assault against a person in a "prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency").

prevented the Attorney General from delegating procurement powers under § 1791, as nothing in the statute appears to prevent the Attorney General from exercising the authority under 18 U.S.C. § 4013 to delegate responsibility for the safekeeping of detainees to the USMS. The court specifically noted that:

> Without express language in the statute stating that the Attorney General herself must procure detention facility contracts, the Court finds that the Assistant Attorney General's delegation of these powers to the OFDT and the USMS indicates that inmates at CCA Leavenworth are held "at the direction of" the Attorney General.

Id. at 1191. In sum, the court held, unequivocally, that "persons held by the USMS at CCA Leavenworth are held by direction of the Attorney General." Id.

In affirming the district court's denial of the motion to dismiss in Kemp, the Tenth Circuit Court of Appeals first reiterated that pursuant to 28 U.S.C. § 561, the USMS is an arm of the Department of Justice which acts under the authority of the Attorney General. See Kemp, 740 F. App'x 636, 637 (10th Cir. 2018). The Tenth Circuit then held that its "review of the record and the relevant case law reveals no legitimate basis on which [d]efendant could challenge the validity of this contract or of the Attorney General's delegation of authority to the Office of the Federal Detention Trustee to enter into this contract." Id. at 637–38. The court cited 28 U.S.C. § 510, which states that "[t]he Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." Id. The court concluded that "[b]ased on the evidence in the record, we are persuaded that [d]efendant was being held 'pursuant to a contract or agreement with the Attorney General,' 18 U.S.C. § 1791(d)(4) . . . ." Id.

8

Here, as in Kemp and Knox, Monta Jordan was being held at the RCJ at the direction of and pursuant to a contract with the USMS at the time Raya is alleged to have attempted to provide him with the prohibited items identified in the Superseding Indictment. See ECF No. 59-1, at 3 (Ex. 1) ("[T]his Agreement is entered into between the United States Marshals Service . . . and Roanoke City Jail . . . ."). The IGA between the USMS and RCJ to house Jordan was entered into pursuant to the authority of Department of Justice Appropriations Act of 2001, Pub. L. No. 106–553, § 119, see id., which states, inter alia, that "the Attorney General hereafter may enter into contracts and other agreements, of any reasonable duration, for detention or incarceration space or facilities, including related services, on any reasonable basis." Given that the USMS operates at the direction of the Attorney General,[6] and because the Attorney General is not prohibited from delegating procurement powers to the USMS, there is simply no basis for drawing any statutory distinction between a contract with the Attorney General, who is the head of the Department of Justice, see 28 U.S.C. § 503, and one with the USMS, an agency within the Department of Justice. See 28 C.F.R. § 0.11(o) ("The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service, including . . . [a]cquisition of adequate and suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities."). This holding is in keeping with the Fourth Circuit's rejection of attempts by defendants to draw statutory distinctions between the Attorney General and its constituent agencies. See, e.g., United States v. Timms, 685 F.

---

[6] See 28 U.S.C., Chapter 1, Subpart B, Section 0.5 ("The Attorney General shall . . . [s]upervise and direct the administration and operation of the Department of Justice, including the office of U.S. Attorneys and U.S. Marshals, which are within the Department of Justice.")

App'x 285 (4th Cir. 2017); United States v. Savage, 737 F.3d 304, 308–09 (4th Cir. 2013). In sum, Raya's attempt to provide Jordan with prohibited items while he was housed at the RCJ pursuant to a contract, i.e., the IGA, with the USMS is punishable under § 1791.[7]

## C.

Raya next argues that if RCJ is determined to be a prison as defined by § 1791(d)(4), such a construction "could result in the [g]overnment asserting federal jurisdiction over any local jail with such a contract with the federal government, regardless of the circumstances." ECF No. 59, at 4; ECF No. 89, at 4. Raya argues that this exercise of authority "could apply to a jail that may have entered in[to] such a contract but is not actually housing any federal inmates at the time of the alleged offense," id. at 4-5, or "[a]lternatively, . . . [even] if the jail is housing a federal inmate other than the person who is the recipient of contraband." Id. at 5. This argument too was rejected by the Kemp and Knox court, as well as the Tenth Circuit on appeal.

In Kemp and Knox, the defendants argued that a definition of "prison" under § 1791 that includes any facility where an inmate is held at the direction of or by contract with the Attorney General would "turn every county jail in [the United States] into an institution in which the federal government can assert federal jurisdiction and prosecute individuals for contraband offenses." Kemp, 200 F. Supp. 3d at 1191; Knox, 2016 WL 4060258, at *3. The defendants in both cases asserted that such a construction would be overbroad, insert ambiguity into the statute, and violate basic federalism and Tenth Amendment principals of

---

[7] See Lumumba v. Marquis, No. 2:13 CV 69, 2013 WL 5429429, at *4 n.4 (D. Vt. Sept. 30, 2013).

10

state sovereignty by allowing federal government intrusion into what they argued should be a purely state concern about the possession of contraband by state inmates. Id. The district court roundly rejected this argument, noting that it relied on the notion that the term "prison" in § 1791 applies to all inmates in a given institution. The court stressed that the definition of the term "prison" confines application of the statute to only those who provide contraband to or possess contraband as "persons held in custody by direction of or pursuant to a contract or agreement with the Attorney General." Id. (citing 18 U.S.C. § 1791(d)(4)). In other words, § 1791 does not apply to inmates in state, local, or private detention facilities who face only state charges.

The Kemp court noted that this understanding as to the applicability of § 1791 is consistent with the way in which courts have interpreted § 1791 after the 2006 amendment to the definition of "prison" and other statutes that turn on whether an inmate is held by direction of the Attorney General or his representatives. Id. (first citing United States v. Blake, 228 Fed. Appx. 791, 795–96 (3d Cir. 2007) (holding that rational jury could have found that defendant was an "inmate of a prison" for § 1791 purposes, where defendant was held at a local facility pending federal charges pursuant to an agreement between the facility and United States); then citing United States v. Bush, No. 07–00072–CG, 2007 WL 3026947 (S.D. Ala. Oct. 15, 2007) (finding that defendant, a "federal inmate" being held at a local jail, was an inmate of a "prison" under the amended definition of § 1791); and then citing United States v. Depew, 977 F.2d 1412, 1414 (10th Cir. 1992) (summarizing cases in which courts have held that a defendant serving a federal prison sentence in a state penitentiary under the direction of the Attorney General is subject to conviction under statute criminalizing escape from "any institution or

facility in which he is confined by direction of the Attorney General")). The Kemp and Knox court concluded that the application of § 1791 was sufficiently cabined such that its application to the defendants in those cases did not violate federalism principles or Tenth Amendment principles of state sovereignty.

The Tenth Circuit, affirming the Kemp court's holding on this particular issue, stated:

> We see no merit to the argument [d]efendant raised below that this interpretation of § 1791 is overly broad because it encompasses within its definition of "prison" any facility where federal detainees are held and might thus apply to state detainees who are housed in the same facility under a separate state contract, which could hypothetically allow federal government intrusion into what [d]efendant argues should be a purely state concern about the possession of contraband by state inmates.

Kemp, 740 F. App'x at 638. The Tenth Circuit noted that for a statute to be invalid as overbroad, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." United States v. Kemp, 740 F. App'x 636, 638 (10th Cir. 2018) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). The Tenth Circuit then held that aside from the defendant's argument regarding hypothetical federal intrusion into state sovereignty, the defendant did not show "such substantial overbreadth here, and we are persuaded 'that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.'" Id. (citing Broadrick, 413 U.S. at 615-16).

The court finds no reason that was not persuasively addressed by the cases cited above for finding that the application of § 1791 in this case would engender the parade of jurisdictional horribles posited by Raya. See United States v. Lee, 815 F.2d 971, 974 (4th Cir. 1987) (holding that a "statute is not invalid merely because some of its hypothetical

applications might raise constitutional problems"); United States v. Masciandaro, 648 F. Supp. 2d 779, 794 (E.D. Va. 2009), aff'd, 638 F.3d 458 (4th Cir. 2011) (holding that defendant's allegations of overbreadth "are purely hypothetical and are unsupported by any showing that the alleged overbreadth is real, let alone substantial").

### D.

Raya further argues that application of § 1791 to federal inmates held at the RCJ would render the statute unconstitutionally vague. Raya contends that if interpreted to apply in a case such as hers, a person would not be on fair notice that she could be charged with a federal crime involving prison contraband by giving contraband to an inmate held in a local city jail. Raya points out that "nothing in the written rules and regulations of the RCJ regarding contraband notifies inmates, visitors, or members of the public that RCJ is considered a federal prison for the purposes of 18 U.S.C. § 1791." ECF No. 89, at 4. Raya asserts that while it may be reasonable to assume that a federal detainee has been notified of the rules and regulations related to his incarceration, and is therefore on notice that he is subject to federal jurisdiction and prosecution, "it is not reasonable or fair to assume that a non-incarcerated member of the general public has been put on notice that a local jail can be considered a federal prison." Id.

In the Fourth Circuit, "[d]ue process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" United States v. Sun, 278 F.3d 302, 309 (4th Cir. 2002) (citing Buckley v. Valeo, 424 U.S. 1, 77 (1976)); see United States v. Hosford, 843 F.3d 161, 170 (4th Cir. 2016). In other words, "the void-for-vagueness doctrine requires that a penal statute define the

13

criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983). Crucially, however, "[a] statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds." United States v. Hager, 721 F.3d 167, 183 (4th Cir. 2013) (citing United States v. Whorley, 550 F.3d 326, 334 (4th Cir. 2008). Indeed, "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." United States v. Aguilar, 585 F.3d 652, 658 (2d Cir. 2009) (quoting United States v. Jin Fuey Moy, 241 U.S. 394, 401 (1916)). In the view of one leading constitutional scholar, "vagueness occurs when a legislature states its proscriptions in terms so indefinite that the line between innocent and condemned conduct becomes a matter of guesswork." Richmond Med. Ctr. for Women v. Gilmore, 11 F. Supp. 2d 795, 812 (E.D. Va. 1998) (citing Laurence H. Tribe, Constitutional Law § 12–31, at 1033 (2d ed. 1988)).

Here, unlike in Kemp and Knox, the vagueness challenge is brought not by a federal detainee, but by a defendant who at the time of the alleged offense was a non-incarcerated member of the public. Notwithstanding this factual dissimilarity, the holdings in Kemp and Knox are as applicable to the facts sub judice. In both of the aforementioned cases, the defendants asserted that application of § 1791 to federal inmates held at CCA Leavenworth would render the statute facially vague because "the term 'prison' is not limited to only federal inmates." Kemp, 200 F. Supp. 3d at 1192; Knox, 2016 WL 4060258, at *4. The district court rejected this argument, holding that because "the term 'prison' is limited to persons in federal

detention facilities and those held at the direction of or pursuant to a contract with the Attorney General," § 1791 is "not facially vague." See Kemp, 200 F. Supp. 3d at 1192. The district court also rejected an as-applied vagueness challenge, wherein the defendants contended that § 1791 was vague because it did not "provide notice to detainees as to the role of the Attorney General," which rendered it "unclear whether [the defendant] [was] being held at a facility subject to federal prosecution under 18 U.S.C. § 1791, or whether he [was] 'under the management and control of a non-federal private corporation.'" Id. at 1193. The court held that the "role of the Attorney General under § 1791 is clear, in that he is responsible for contracting for housing and directing the placement of inmates pending federal charges – or delegating that authority to an authorized representative, such as the . . . USMS." Id.

The Tenth Circuit again affirmed the Kemp court's holdings as to vagueness, finding "no merit" to the arguments described above. The Tenth Circuit noted that § 1791 "plainly prohibits the possession of weapons and other prohibited objects by prison inmates, and there is nothing inherently vague about the statute that would lead to its arbitrary enforcement or prevent inmates from understanding what conduct is prohibited." Kemp, 740 F. App'x at 638. The court noted that while "there may be some factual circumstances in which it may be somewhat unclear whether certain inmates are being housed by direction of or pursuant to a contract or agreement with the Attorney General," this alone does not render the statute vague, "'for even clear rules produce close cases.'" Id. (citing Salman v. United States, 137 S. Ct. 420, 429(2016)). Lastly, the court noted that the defendant in question was certainly "on fair notice that his conduct was unlawful," as "any federal inmate of ordinary intelligence should understand that . . . that he cannot possess a prohibited object in prison . . . ." Id.

In United States v. Blake, 288 F. Appx 791 (3d Cir. 2008), the Third Circuit rejected a similar vagueness challenge to § 1791. In that case, the defendant, housed in the Virgin Island's Golden Grove Correctional Facility ("Golden Grove") pursuant to a contract with the USMS, contended that because of § 1791's ambiguous "catchall" contraband provision, he was "never on notice . . . that he was subject to any rules or regulations of the Federal government regarding possession of a cell phone or cell phone charger." Id. at 793–94. The "catchall" provision to § 1791(d)(1)'s specific list of "prohibited object[s]" defined "prohibited object" as also meaning "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual."[8] Id. at 792 n.1. The Third Circuit, sidestepping (or discounting) the question of whether the defendant was specifically on notice that possession of a cellphone was prosecutable federally, noted that given the unique prison context in which the statute was applied, "the ordinary person would know that an inmate's possession of a cell phone would 'threaten the order, discipline, or security of a prison, of the life, health, or safety of an individual.'" Id. at 795. The Third Circuit therefore held that the statute was not facially vague. Nor did the Third Circuit accept the related "as-applied" vagueness challenge. The majority held that while there "may very well be a situation that raises serious vagueness concerns from an enforcement perspective," as applied to the possession of a cellphone and charger, "objects an ordinary person would know he or she could not possess in jail, there is not a sufficient level of concern regarding the level of discretion given to police to render this statute unconstitutional." Id. at 795. In short, the Third

---

[8] Congress has since "amended the statute at hand [to] specifically make[] possession of a cell phone by federal inmates illegal." See United States v. Beason, 523 F. App'x 932, 936 (4th Cir. 2013).

16

Circuit, like the Tenth Circuit in Kemp, the was substantially less interested in whether the defendant was aware that he was subject to federal prosecution than it was in whether an ordinary person would have known that possessing the objects in question was wrongful and subject to criminal sanction generally. See id. at 796-797, 797 n.8

Given that the court has concluded that § 1791 unambiguously prohibited the provision of contraband to federal detainees (such as Jordan) held pursuant to contracts (such as the IGA) with the USMS, acting under lawfully delegated authority from the Attorney General, the question then becomes whether a defendant must possess knowledge of the facts giving rise federal jurisdiction. In Torres v. Lynch, 136 S. Ct. 1619 (2016), the Supreme Court recently explained that although courts generally "interpret criminal statutes to require that a defendant possess a mens rea, or guilty mind, as to every element of an offense," this is not so when it comes to jurisdictional elements. Id. at 1630–31. That is, "when Congress has said nothing about the mental state pertaining to a jurisdictional element, the default rule flips: Courts assume that Congress wanted such an element to stand outside the otherwise applicable mens rea requirement." Id. In short, "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." Id. at 1631; see United States v. Cooper, 482 F.3d 658, 664 (4th Cir. 2007) (observing that "mens rea requirements typically do not extend to the jurisdictional elements of a crime"); United States v. Murillo, 826 F.3d 152, 159 (4th Cir. 2016); United States v. Flores, No. 1:18-CR-00102-MR, 2018 WL 6528475, at *3 (W.D.N.C. Dec. 12, 2018) (citing Torres and rejecting due process argument that government must prove defendant was on notice of Indian status of victim, as Indian status elements relate to jurisdiction, and the

"[g]overnment need not prove that a defendant had actual knowledge of a jurisdictional element"). Indeed, extending a mens rea requirement to the jurisdictional hook of a crime is directly contrary to longstanding Fourth Circuit precedent. See United States v. Sepulveda, 57 F. Supp. 3d 610, 614 (E.D. Va. 2014) (collecting cases).

Here, § 1791 unambiguously prohibits the provision of contraband, including, specifically, marijuana, see § 1791 (d)(1)(B), and phones, see § 1791 (d)(1)(F), to an "inmate" of a "prison." See generally 18 U.S.C. § 1791. Moreover, § 1791 specifically defines prison to include facilities like the RCJ where federal inmates, such as Jordan, are detained. Id. The court agrees with the Tenth Circuit's determination in Kemp that there is nothing inherently vague about the statute that would lead to its arbitrary enforcement or prevent the public from understanding what conduct is prohibited. 740 F. App'x at 638. While not herself detained at the RCJ, there is no question that a person of ordinary intelligence would know that it is unlawful to ship, inter alia, marijuana to an inmate regardless of the facility in which he or she is held. Cf. United States v. Beason, 523 F. App'x 932, 934 (4th Cir. 2013) ("[U]nlike the marijuana . . . , the illegality of which is widely known to the general public, cell phones are not inherently illegal. It follows that a reasonable person would not be aware that possession of an innocuous legal item would subject them to prosecution. For all of these reasons, the statute does not provide an ordinary person fair notice that possession of a cell phone would subject him to federal criminal sanctions."). Indeed, the evidence, as it has been represented to the court, suggests that whomever built the binder in question deliberately attempted to conceal the contraband in question. See Blake, 288 F. App'x at 795 ("While the vagueness inquiry is an objective one, we note in passing that, by hiding the cell phone and charger in his

shoes, [defendant] demonstrated actual knowledge that he could not possess the cell phone and charger he was charged with possessing."). Unlike in Blake, where the defendant possessed a cellphone at a time when cellphones were not included explicitly in § 1791's definition of "prohibited object[s]," both marijuana and phones were specifically identified as prohibited items when Raya is alleged to have committed the instant offense. Finally, the fact that Raya may not have been aware of facts (e.g., Jordan's status as a federal detainee held pursuant to a contract with the USMS in a "prison" as clearly defined in § 1791) that subjected her federal prosecution is, under Torres, its progeny, and substantial Fourth Circuit precedent, of no moment.

E.

Finally, Raya argues that even if not unconstitutionally vague, § 1791 is ambiguous as to whether the RCJ qualifies as a "prison," and that pursuant to the well-established rule of lenity, the court should not interpret the term "prison" in a way that would disfavor her. The rule of lenity holds that a court should adopt the construction of an ambiguous statute that is most favorable to the defendant. See, e.g., Chapman v. United States, 500 U.S. 453, 463 (1991); United States v. Bass, 404 U.S. 336, 347 (1971); United States v. Horton, 321 F.3d 476, 479 (4th Cir. 2003). It is not the case that a provision is "'ambiguous' for purposes of lenity merely because it [is] possible to articulate a construction more narrow than that urged by the [g]overnment." United States v. Serafini, 826 F.3d 146, 151 (4th Cir. 2016) (citing Moskal v. United States, 498 U.S. 103, 108 (1990)). In order to invoke the rule, there must be a "grievous ambiguity or uncertainty in the language and structure of the provision], such that even after

a court has seize[d] everything from which aid can be derived, it is still left with an ambiguous statute." Id. (citing Chapman, 500 U.S. at 463).

The court concludes, consistent with the holdings in Kemp and Knox, that the term "prison" in § 1791 unambiguously refers to facilities in which persons are held pursuant to an agreement with the USMS, an agency which acts at the direction of the Attorney General. The rule of lenity simply does not apply to this case. There is no grievous ambiguity or uncertainty for the court to construe in a manner most favorable to Raya.

### III.

For the foregoing reasons, Raya's motion to dismiss, ECF No. 59, is **DENIED**. An appropriate Order will be entered.

Entered: 08-26-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge